## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

JOHN FARMA,                          )
    Petitioner,                   )
                                  )
v.                                   )      CIVIL ACTION
                                  )      NO. 05-10193-RGS
JOHN J. O'BRIEN                      )
    Respondent.                   )
_____)

### EXHIBIT TO RESPONDENT'S MEMORANDUM OF LAW
### IN OPPOSITION TO HABEAS CORPUS PETITION

The respondent, John J. O'Brien, hereby files the Commonwealth's brief in the case of

*Commonwealth v. John Farma*, Massachusetts Appeals Court No. 2003-P-0874, as an

attachment to his Memorandum of Law in Opposition to Mr. Farma's Habeas Corpus Petition.

Respectfully submitted,

THOMAS F. REILLY
ATTORNEY GENERAL

Daniel I. Smulow, BBO 641668
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200 ext. 2949

Dated: January 3, 2006

### Certificate of Service

I, Daniel I. Smulow, hereby certify that on January 3, 2006, I served a true copy of this document by first class mail to counsel for the petitioner: Roger Witkin, Esq., 6 Beacon Street, Suite 1010, Boston, MA 02108. I further certify that this document is exempt from filing through the ECF system pursuant to Section "H.1" of the Court's Electronic Case Filing Administrative Procedures.

Daniel I. Smulow

## COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

No. 2003-P-0874

COMMONWEALTH OF MASSACHUSETTS,
Appellee

V.

JOHN FARMA,
Defendant-Appellant

COMMONWEALTH'S BRIEF AND SUPPLEMENTAL APPENDIX
ON APPEAL FROM JUDGMENTS OF
THE DORCHESTER DISTRICT COURT

SUFFOLK COUNTY

DANIEL F. CONLEY
District Attorney
For The Suffolk District

ON THE BRIEF:
GREER SPATZ
Legal Assistant to
The District Attorney

DONNA JALBERT PATALANO
Assistant District Attorney
For The Suffolk District
BBO# 651223
One Bulfinch Place
Boston, MA 02114
(617)619-4070

October 2002

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................. ii

ISSUES PRESENTED ...................................... 1

STATEMENT OF CASE ..................................... 1

STATEMENT OF FACTS ................................... 2

     I.    COMMONWEALTH'S CASE ...................... 2

     II.   DEFENDANT'S CASE ......................... 6

     III. MOTION FOR A NEW TRIAL .................. 7

ARGUMENT ............................................. 8

I.    THE MOTION JUDGE PROPERLY DENIED THE
    DEFENDANT'S MOTION FOR NEW TRIAL
    BECAUSE THE DEFENDANT FAILED TO
    DEMONSTRATE THAT HE WAS DENIED
    EFFECTIVE ASSISTANCE OF COUNSEL DUE TO
    COUNSEL'S FAILURE TO INVESTIGATE OR
    PRESENT EVIDENCE OF SELF-DEFENSE. ............ 8

A.    Trial counsel was not ineffective in
    presenting the defendant's defense.......... 10

B.    Trial counsel did effectively attack
    the Commonwealth's evidence. ................ 17

C.    Trial counsel did investigate the
    defendant's claims regarding Ms.
    Murphy's mental state. ...................... 20

II.   THE MOTION JUDGE CORRECTLY DENIED THE
    DEFENDANT'S MOTION FOR NEW TRIAL
    WITHOUT AN EVIDENTIARY HEARING WHERE
    THE DEFENDANT FAILED TO MAKE A
    SUBSTANTIAL SHOWING THAT AN EVIDENTIARY
    HEARING WAS WARRANTED. ...................... 21

CONCLUSION .......................................... 25

ADDENDUM ............................................ 26

COMMONWEALTH'S SUPPLEMTAL APPENDIX .................. 29

ii

## TABLE OF AUTHORITIES

### CASES

Breese v. Commonwealth, 415 Mass. 249
(1993) ........................................14

Cabrera v. State, 766 So. 2d 1131 (Fla.
Dist. Ct. App. 2000) ..........................17

Commonwealth v. Callahan, 401 Mass. 627
(1988) ........................................10

Commonwealth v. Carroll, 439 Mass. 547
(2003) ........................................18

Commonwealth v. Cepulonis, 9 Mass. App.
Ct. 302 (1980) ................................14

Commonwealth v. Clerico, 35 Mass. App.
Ct. 407 (1993) .................................9

Commonwealth v. Cook, 438 Mass. 766
(2003) ........................................22

Commonwealth v. DeChristoforo, 360
Mass. 531 (1971) ...........................9, 22

Commonwealth v. DeVincent, 421 Mass. 64
(1995) ....................................22, 25

Commonwealth v. Duran, 435 Mass. 87
(2001) ........................................11

Commonwealth v. Fanelli, 412 Mass. 497
(1992) .........................................9

Commonwealth v. Fisher, 433 Mass. 340
(2001) ....................................17, 20

Commonwealth v. Fuller, 394 Mass. 251
(1985) ........................................10

Commonwealth v. Gagliardi, 418 Mass.
562, cert. denied, 115 S. Ct. 753
(1995) .........................................9

Commonwealth v. Grace, 397 Mass. 303
(1986) .....................................9, 22

Commonwealth v. Haas, 398 Mass. 806
(1986) ........................................13

Commonwealth v. Henson, 394 Mass. 584
(1985) ........................................10

*Commonwealth v. Johnson*, 435 Mass. 113
(2001) ........................................ 24

*Commonwealth v. Knight*, 437 Mass. 487
(2002) ........................................ 17

*Commonwealth v. Laurore*, 437 Mass. 65
(2002) ........................................ 23

*Commonwealth v. Licata*, 412 Mass. 654
(1992) ...................................... 9, 22

*Commonwealth v. Little*, 376 Mass. 233
(1978) ........................................ 14

*Commonwealth v. Lopez*, 426 Mass. 657
(1998) ........................................ 23

*Commonwealth v. Lynch*, 439 Mass. 532
(2003) ........................................ 11

*Commonwealth v. Martin*, 427 Mass. 816
(1998) ........................................ 11

*Commonwealth v. Moore*, 408 Mass. 17
(1990) ......................................... 8

*Commonwealth v. Nieves*, 429 Mass. 763
(1999) ........................................ 24

*Commonwealth v. Rondeau*, 378 Mass. 408
(1979) ........................................ 14

*Commonwealth v. Saferian*, 366 Mass. 89
(1974) .................................... passim

*Commonwealth v. Satterfield*, 373 Mass.
109 (1977) ................................... 13

*Commonwealth v. Savage*, 51 Mass. App.
Ct. 500 (2001) ............................... 12

*Commonwealth v. Scoggins*, 439 Mass. 571
(2003) ........................................ 22

*Commonwealth v. Scott*, 428 Mass. 362
(1998) ........................................ 20

*Commonwealth v. Serino*, 436 Mass. 408
(2002) ........................................ 11

*Commonwealth v. Stewart*, 383 Mass. 253
(1980) ........................................ 22

*Commonwealth v. Vasquez*, 55 Mass. App.

Ct. 523 (2002) .................................. 12

*Dames v. State*, 807 So. 2d 756 (Fla.
     Dist. Ct. App. 2002) .......................... 17

*Stephens v. State*, 748 So. 2d 1028
     (Fla. 1999) ................................... 17

*Strickland v. Washington*, 446 U.S. 668
     (1984) ......................................... 9

**STATUTES**

G. L. c. 265, §15A(b) ................................ 1

**RULES**

Mass. R. App. P. 18(a)(3) ........................... 7

Mass. R. Crim. P. 30(c)(3) .......................... 22

## ISSUES PRESENTED

I.   Whether the motion judge properly denied the
     defendant's motion for a new trial because the
     defendant failed to demonstrate that he was
     denied effective assistance of counsel due to
     counsel's failure to investigate or present
     evidence of self-defense.

II.  Whether the motion judge correctly denied the
     defendant's motion for a new trial without
     conducting an evidentiary hearing where the
     defendant failed to make a substantial showing
     that an evidentiary hearing was warranted.

## STATEMENT OF CASE

On March 19, 2002, South Boston District Court
issued a complaint charging the defendant, John Farma,
with one count of assault and battery with a dangerous
weapon, to wit: a shod foot, in violation of G. L.
c. 265, §15A(b) (R. 3).[1] On March 26, 2002, the court
issued a no contact and stay away order from the

---

[1] References to the defendant's brief will be indicated
by (D.Br. [page]); to the defendant's Addendum by
(D.A. [page]); to the defendant's Record Appendix by
(R. [page]); to the Commonwealth's Supplemental
Appendix by (C.A. [page]); to the Trial Transcript by
(Tr. [vol]:[page]); and to the Commonwealth's Exhibits
as (Ex. ).

victim, Theresa Murphy, against the defendant (C.A. 2).

On February 4, 2003, after a two-day jury trial in Dorchester District Court before Judge Robert Ronquillo, the jury found the defendant guilty as charged (C.A. 2). Judge Ronquillo sentenced the defendant to eighteen months in the House of Correction, six months to serve and the balance suspended until February 4, 2004 (R. 8).

On March 25, 2003, the defendant, represented by new counsel, filed a motion for a new trial and supporting affidavits (C.A. 3-8). On April 28, 2003, Judge Ronquillo held a non-evidentiary hearing on the defendant's motion (R. 13). On May 19, 2003, he denied the motion (C.A. 3). On May 27, 2003, the defendant filed a notice of appeal (C.A. 3).

## STATEMENT OF FACTS

### I. Commonwealth's Case

On March 13, 2002, Theresa Murphy and several co-workers attended a union meeting at Florian Hall in Dorchester (Tr. 1:66). A few hundred people, including the defendant, attended the meeting (Tr. 1:67, 2:44). Ms. Murphy sat with co-workers during the meeting (Tr. 1:68). Prior to that evening

Ms. Murphy had not known the defendant, and she was unaware of the defendant's presence that evening (Tr. 1:67-68).

After the meeting, Ms. Murphy and her co-workers went to a bar in Florian Hall (Tr. 1:68). At the bar, Ms. Murphy met the defendant along with others in a "meet-and-greet" type of atmosphere (Tr. 1:69). She did not engage the defendant in conversation (Tr. 1:69). Ms. Murphy next came into contact with the defendant between eleven and eleven-thirty that evening, when someone mentioned that somebody needed a ride back to South Boston (Tr. 1:71). Without knowing the identity of the person in need of the ride, Ms. Murphy offered a ride, as she was driving to South Boston (Tr. 1:71). As it turned out, the defendant was the person in need of a ride (Tr. 1:71). Ms. Murphy then drove the defendant to South Boston (Tr. 1:71).

During the ten-minute drive from Dorchester to South Boston, Ms. Murphy noticed that the defendant was very quiet (Tr. 1:71). She tried to make conversation with him to no avail (Tr. 1:71-72). Although Ms. Murphy had been told that the defendant lived on Farragut Road in South Boston, she did not know in which house he lived (Tr. 1:72). Upon

4

reaching Farragut Road, Ms. Murphy repeatedly asked the defendant for his house number but he did not answer her (Tr. 1:72). The defendant finally answered, asking her to take a right at the end of Farragut Road, which would bring her toward the beach and Castle Island (Tr. 1:73). Because that area was non-residential, Ms. Murphy refused (Tr. 1:73). She said she would drop him off at his house or, if he didn't tell her his address, she would simply let him out where they were stopped (Tr. 1:73). At this point the defendant became verbally abusive to Ms. Murphy, making statements such as, "I'm taking you to my house, I'm going to fuck you, I'm going to have you" (Tr. 1:73-74).

Ms. Murphy first tried to speak calmly with the defendant; she told him, "No you're going home and I'm going home" (Tr. 1:74). Ms. Murphy was scared (Tr. 1:74). She did not know how to get the defendant out of her car (Tr. 1:74). Ms. Murphy then pulled over and started yelling at the defendant in an attempt to get him out of her car, but he still would not leave (Tr. 1:74). Ms. Murphy finally picked up her cell phone and dialed 911 (Tr. 1:75). Before Ms. Murphy could hit the send button, the defendant

delivered the first of his blows to the back of her
head (Tr. 1:75).

    After being punched twice in the back of the
head, Ms. Murphy got out of the car (Tr. 1:75). She
ran across the street in an attempt to get away from
the defendant (Tr. 1:75). The defendant got out of
the car (Tr. 1:76). He knocked her down from behind
and punched and kicked her (Tr. 1:76). Ms. Murphy
twice tried to get up, but the defendant punched her
in the back of the head each time until she finally
lay in a fetal position (Tr. 1:76). Throughout the
attack Ms. Murphy was yelling and screaming "no" and
"stop" (Tr. 1:76). At no point did she fight back
(Tr. 1:77). Eventually, a man and a woman came to
Ms. Murphy's aid, reassuring her that the defendant
had gone (Tr. 1:77). The police arrived shortly
thereafter (Tr. 1:77).

    The police first asked Ms. Murphy whether she
wanted to go to the hospital, and she declined
(Tr. 1:77). Ms. Murphy then spoke with Officer Steven
Horne   regarding   the   attack   (Tr. 1:77-78, 100).
Ms. Murphy identified the defendant by name as her
attacker (Tr. 1:106). Officer Horne also spoke with
the man and woman who had come to Ms. Murphy's aid,
but they were not called to testify (Tr. 1:105).

6

After speaking with the witnesses, the officers searched the area for the defendant but were unable to apprehend him that evening (Tr. 1:106).

Later that day, at about nine o'clock in the morning, Ms. Murphy went to her doctor to be examined (Tr. 1:80). Pictures were taken of her injuries, which were entered into evidence along with medical records (Tr. 1:80-87; Ex. 1-8).

## II. *Defendant's Case*

The defendant denied assaulting and battering Ms. Murphy (Tr. 2:47-48). He testified that he had been drinking heavily that evening at Florian Hall and did not really remember leaving the union hall or the ride home (Tr. 2:45-46). He did not know with whom he had gotten a ride home (Tr. 2:46). He had passed out in the car and was awakened by someone yelling at him and hitting him (Tr. 2:46). He identified Ms. Murphy as the person who had hit him (Tr. 2:48). He claimed to have been hit with a hard object and surmised that it might have been a cellular phone (Tr. 2:47). He then pushed Ms. Murphy away, got out of the car and attempted to make his way home (Tr. 2:47). Before he could get to his house, however, Ms. Murphy came at him from behind (Tr. 2:48). He tried to get her off of him and get away (Tr. 2:48). He denied that he had

hit Ms. Murphy and claimed that he was merely defending himself by pushing her off of him (Tr. 2:53).

### III. Motion For A New Trial

On April 28, 2003, Judge Ronquillo, the trial judge, heard the defendant's motion for a new trial (R. 13). Judge Ronquillo noted on the record that he had read each of the five affidavits the defendant submitted in support of his motion (R. 15; C.A. 3-8).2  The defendant claimed ineffective assistance of counsel based on his trial counsel's failure to investigate the relevance of and introduce into evidence: (1) witnesses that would corroborate the defendant's self-defense presentation; and (2) medical records and testimony that allegedly would have proven that the defendant had been attacked by Ms. Murphy (D.Br. 12-13).3  The defendant did not include an affidavit from his trial counsel (D.Br. 36-37).  Judge Ronquillo denied the motion for a new trial, ruling that "[Counsel's] conduct and trial tactics did not rise to

---

2 Contrary to the defendant's contention (D.Br. 4), the defendant provided five affidavits from co-workers, relatives and a neighbor in addition to his own self-serving affidavit (R. 9-10, 15; C.A. 3-8).
3 The defendant did not include a copy of his memorandum of law in support of his motion. See Mass. R. App. P. 18(a)(3).

behavior falling measurably below that which might be expected from an ordinary fallible lawyer...."
(D.A. 22A).

The Commonwealth refers to other facts as they arise in the argument.

## ARGUMENT

I. **THE MOTION JUDGE PROPERLY DENIED THE DEFENDANT'S MOTION FOR NEW TRIAL BECAUSE THE DEFENDANT FAILED TO DEMONSTRATE THAT HE WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL DUE TO COUNSEL'S FAILURE TO INVESTIGATE OR PRESENT EVIDENCE OF SELF-DEFENSE.**

The defendant claims on appeal that the motion judge erred by denying the defendant's motion for a new trial (D.Br. 5-18). Specifically, the defendant argues that trial counsel was ineffective in presenting the defendant's defense because he failed to: (1) give a timely opening statement; (2) effectively attack the Commonwealth's evidence; (3) present or obtain certain evidence; and (4) investigate the defendant's defense (D.Br. 5). The defendant's claims, however, are without force because he has failed to demonstrate injustice or prejudice. Therefore, this Court should affirm the motion judge's denial of the defendant's motion.

The denial of a new trial motion is within the discretion of the motion judge. *Commonwealth v. Moore*, 408 Mass. 17, 125 (1990); *Commonwealth v.*

*Clerico*, 35 Mass. App. Ct. 407, 411 (1993). The court will extend special deference to a motion judge who was also the trial judge. *Commonwealth v. Grace*, 397 Mass. 303, 307 (1986), citing *Commonwealth v. DeChristoforo*, 360 Mass. 531, 543 (1971). The motion should be allowed only if it appears from the record that "justice may not have been done." *Commonwealth v. Gagliardi*, 418 Mass. 562, 564-565, *cert. denied*, 115 S. Ct. 753 (1995); *Commonwealth v. Fanelli*, 412 Mass. 497, 514 (1992). The standard mandated by Rule 30(b) is to be applied rigorously, and the motion for a new trial should be allowed only where the defendant can prove manifest injustice. *Gagliardi*, 418 Mass. at 565; *Fanelli*, 412 Mass. at 504. To establish ineffective assistance of counsel, the defendant bears the burden of demonstrating both that his attorney's performance fell "measurably below that which might be expected from an ordinary fallible lawyer," and that the sub-par performance prejudiced his case by "likely depriv[ing] the defendant of an otherwise available, substantial ground of defense". *Commonwealth v. Licata*, 412 Mass. 654, 661 (1992), quoting *Commonwealth v. Saferian*, 366 Mass. 89, 96 (1974).[4] In

---

[4] The defendant bases his claim on both Federal and State grounds, citing *Strickland v. Washington*, 446 U.S. 668 (1984). This distinction is of little import

the present case, the defendant's allegations of trial counsel's ineffectiveness are vague and without merit. Indeed the trial judge, who also served as the motion judge, noted near the end of the trial, "[B]oth lawyers are to be commended for fulfilling their responsibilities in this case" (Tr. 2:96).

## A. Trial counsel was not ineffective in presenting the defendant's defense.

The defendant claims that trial counsel was ineffective because he failed both to investigate the defendant's self-defense claim as well as potential witnesses that could have bolstered his defense (D.Br. 5). The defendant further claims that trial counsel was made aware of potential witnesses who could have been helpful in building the defendant's defense[5] (D.Br. 11-13; R. 4-8).

---

as it is well established that "if the *Saferian* test is met, the Federal test is necessarily met as well." *Commonwealth v. Callahan*, 401 Mass. 627, 635 n.10 (1988) (quoting *Commonwealth v. Fuller*, 394 Mass. 251, 256 n.3 (1985)).

[5] The defendant's contention that trial counsel failed to investigate evidence that he was under the influence of medication as well as alcohol is irrelevant as assault and battery with a dangerous weapon is a general intent crime (D.Br. 12; C.A. 4, 6) *See Commonwealth v. Henson*, 394 Mass. 584, 592 (1985) (assault and battery by means of a dangerous weapon

Trial counsel's failure to call certain witnesses does not rise to the level of ineffectiveness set forth in *Saferian*. The tactics of trial counsel are not called into question unless they are found to be manifestly unreasonable. *Commonwealth v. Martin*, 427 Mass. 816, 882 (1998). Without an affidavit from trial counsel, this Court cannot know trial counsel's reasons for not interviewing witnesses. *See Commonwealth v. Duran*, 435 Mass. 87, 102 (2001) (holding that the failure to investigate does not necessarily give rise to any cognizable claim). Significantly, the defendant did not submit an affidavit from trial counsel to support the defendant's motion for a new trial. *See Commonwealth v. Lynch*, 439 Mass. 532, 539 n.2 (2003) (defendant failed to meet his burden of demonstrating that trial counsel's decision was ineffective without affidavit from trial counsel); *Commonwealth v. Serino*, 436 Mass. 408, 415-416 (2002) (affirming denial of motion for new trial based on claim of ineffective assistance of counsel where motion was not supported by affidavit of trial counsel); *Commonwealth v. Vasquez*, 55 Mass. App.

does not require proof of specific intent).

Ct. 523, 533-534 (2002) (affirming denial of motion for new trial, and noting conspicuous absence of affidavit from trial counsel in support of motion); Commonwealth v. Savage, 51 Mass. App. Ct. 500, 505 n.6 (2001) (same). Because trial counsel did not submit an affidavit regarding his decision to not call the witnesses specified, the defendant must show through the record that trial counsel's decision not to call these additional witnesses was manifestly unreasonable and created a substantial likelihood of a miscarriage of justice.

The affidavits submitted by the defendant as part of his motion for new trial do not contain any evidence that the witnesses could have testified to that offer anything more than cumulative evidence. For example, Carl Regan, who was called as a witness, prepared an affidavit that merely stated he believed he had not been adequately prepared (C.A. 7). Anne Farma, the defendant's sister who was also called as a witness, prepared an affidavit that also stated she felt unprepared (C.A. 5). A witness's belief that he or she has not been adequately prepared by trial counsel does not necessarily demonstrate the "serious

inefficiency, incompetentcy, or inattention" required
to show ineffective assistance of counsel.
Commonwealth v. Haas, 398 Mass. 806, 811-812 (1986)
(holding that counsel's preparation of an expert
witness, in which counsel met with the witness only
once during the morning prior to his planned
testimony, after doing extensive investigatory
research, did not deprive the defendant of effective
assistance of counsel). Phillip Powell and Daniel
Fowkes, the defendant's co-workers, stated in their
affidavits that they did speak with trial counsel
regarding the defendant's injuries but were not called
to testify (C.A. 4, 6). Their testimony regarding the
defendant's injuries, even if true, would have been
merely cumulative of both Ms. Farma and Mr. Regan's
testimony about those injuries (Tr. 2:18, 33). Cf.
Commonwealth v. Satterfield, 373 Mass. 109, 115 (1977)
(holding that, in an ineffective assistance of counsel
claim, there ought to be a showing that "better work
might have accomplished something material for the
defense" unless "the defense was so botched that
judgments on that hypothetical question might be
without value"). Finally Nancy Farma, the defendant's

14

mother who was not called to testify, submitted an
affidavit that she could have also testified to her
son's injuries (C.A. 8). Again, her testimony would
have been merely cumulative. Therefore, trial
counsel's decision not to call Mrs. Farma does not
fall measurably below that which might be expected
from an ordinary fallible lawyer. In sum, there is no
additional evidence from any of the affidavits that
the incident did not occur in the manner described by
Ms. Murphy. Ineffectiveness is not established by
merely showing that trial counsel failed to call an
additional witness to bolster the defendant's case.
*Commonwealth v.* Rondeau, 378 Mass. 408 (1979), citing
*Commonwealth v. Little*, 376 Mass. 233, 241-242 (1978).
*See also Commonwealth v. Cepulonis*, 9 Mass. App. Ct.
302, 304 (1980) (failing to investigate a groundless
defense does not rise to the level of ineffective
assistance of counsel); *Breese v. Commonwealth*, 415
Mass. 249, 253 (1993) (failing to investigate another
suspect does not classify as ineffective assistance of
counsel). Therefore, trial counsel cannot be faulted
for making the decisions he made regarding the

preparation of the witnesses and whom to call to testify.

Irrespective of the defendant's claims that trial counsel failed to call certain witnesses to testify, trial counsel did effectively put forth defendant's self-defense claim. Trial counsel attempted to get Ms. Murphy's statements to the police excluded during the voir dire (Tr. 1:16-29). Trial counsel also attempted to get Ms. Murphy's full medical records submitted into evidence (Tr. 2:3). Moreover, trial counsel cross-examined Ms. Murphy regarding her version of events as well as Officer Horne regarding the facts as he was told as opposed to the facts in his report (Tr. 1:16-23, 88-95, 108-109).[6] Trial counsel put the defendant on the stand and elicited testimony that Ms. Murphy "was yelling at [him] and hitting [him]" (Tr. 2:46). Trial counsel further elicited testimony that the defendant pushed Ms. Murphy in response to her attack on him (Tr. 2:47). He also elicited testimony from Mr. Regan

---

[6] The transcript is incomplete with regard to trial counsel's cross-examination of Officer Horne, but its contents may be inferred from the cross-examination of Officer Horne during voir dire.

16

that Ms. Murphy had come upon the defendant from
behind and "tried to grab him" (Tr. 2:16).
Furthermore, trial counsel elicited testimony from
both Ms. Farma and Mr. Regan as to the defendant's
injuries (Tr. 2:18, 33). Trial counsel then requested
and received a jury instruction on self-defense
(Tr. 2:57-58). It cannot be said, therefore, that
counsel was ineffective in presenting the defendant's
self-defense claim.

Even if this Court finds that trial counsel's
decisions were manifestly unreasonable, the defendant
cannot satisfy the second prong of *Saferian* – that
trial counsel's actions likely deprived the defendant
of an otherwise available, substantial ground of
defense.[7] The defendant unavailingly cites several
cases regarding the court's failure to give a self-
defense instruction. This is of little import here,
as the jury was given a self-defense instruction
(Tr. 2:109-113). In any event, the cases cited are
all Florida cases, and thus are not controlling in

---

[7] The defendant was given the opportunity to argue
self-defense; he testified that he was attacked,
testimony the jury clearly rejected evidenced by its
guilty verdict.

this jurisdiction.[8]  For both of these reasons, the
defendant failed to show that he was deprived of any
defense.

## B.  Trial counsel did effectively attack the Commonwealth's evidence.

The defendant claims that trial counsel failed to
effectively attack the Commonwealth's case (D.Br. 5).
The defendant is wrong.  Trial counsel did effectively
attack the Commonwealth's case during his cross-
examination of the Commonwealth's witnesses.  See
Commonwealth v. Knight, 437 Mass. 487, 503 (2002)
(holding that an imperfect cross-examination of a
witness is not the standard used to evaluate the
effectiveness of counsel); see also Commonwealth v.
Fisher, 433 Mass. 340, 357 (2001) (holding that the
court will show deference to the trial counsel's
tactics in cross-examining witnesses).  Trial counsel

---

[8] See Cabrera v. State, 766 So. 2d 1131 (Fla. Dist. Ct.
App. 2000)(cited at D.Br. 9-10) (entrapment defense
instruction was not given); Stephens v. State, 748 So.
2d 1028 (Fla. 1999) (cited at D.Br. 10) (judge
deprived defendant of his sole defense by not giving
jury instruction on self-defense); Dames v. State, 807
So. 2d 756 (Fla. Dist. Ct. App. 2002) (cited at D.Br.
10) (remanded for a new trial as defense counsel
failed to present evidence of self-defense, and hence
jury was not instructed on self-defense).

18

attacked the Commonwealth's case on many levels.
Prior to the start of the trial, he asked for and
received a voir dire concerning the Commonwealth's
ability to get hearsay evidence in at trial through
the excited utterance exception (Tr. 1:3). During his
voir dire cross-examination, he questioned Officer
Horne regarding the proximity between his speaking
with Ms. Murphy and the incident (Tr. 1:17-18). He
also elicited Officer Horne's testimony that he
"assumed" the time the incident occurred (Tr. 1:18),
and that, although he stated on direct examination
that Ms. Murphy had been crying, he had not noted that
she was crying or excited in his police report
(Tr. 1:20-21). Even though Judge Ronquillo ultimately
allowed the hearsay in (Tr. 1:29), trial counsel asked
that his objection be noted and he further objected on
the record again during the trial, thus preserving the
defendant's objection on appeal (Tr. 1:29, 101).
While the trial judge properly allowed Ms. Murphy's
statements to Officer Horne into evidence, still
counsel did pursue every tactical choice available to
stop their admission on the record. *Cf*. *Commonwealth
v. Carroll*, 439 Mass. 547, 557 (2003) (holding that

counsel's failure to object to the admission of hearsay statements does not rise to the level of ineffective assistance of counsel).

What is more, trial counsel made a motion for a required finding of not guilty, thereby further preserving the defendant's appellate rights on the record (Tr. 2:71). At the close of the defendant's case, trial counsel further objected to the jury instruction regarding deadly force, which the court allowed (Tr. 2:61-65). Trial counsel then moved for a required finding again and put his objection against the aggravating element, dangerous weapon, on the record (Tr. 2:71-73). Again, trial counsel meticulously preserved the record and attacked the Commonwealth's case.

Similarly, after the Commonwealth's closing argument, trial counsel asked for a sidebar, stating that the Commonwealth had mischaracterized the evidence during his closing and was burden-shifting (Tr. 2:93-94). Again, in a meticulous manner, trial counsel made sure that he preserved the record and made any objection he could in good faith.

For all of these reasons, the defendant's

contention that trial counsel did not effectively attack the Commonwealth's case must fail.

## C.   Trial counsel did investigate the defendant's claims regarding Ms. Murphy's mental state.

The defendant claims that trial counsel failed to investigate evidence relating to Ms. Murphy's mental state (D.Br. 13, 17). As another in a list of defendant's subjective critiques, this claim must fail. See Fisher, 433 Mass. at 354; Commonwealth v. Scott, 428 Mass. 362, 369 (1998) (holding that defense counsel is called on to make numerous tactical decisions, and a subjective list of critiques of counsel's decisions without evidence of prejudicial error is not enough to support an ineffective assistance of counsel claim).

Contrary to the defendant's claims, trial counsel did seek to get records concerning Ms. Murphy's use of Xanax, a prescription medicine for anxiety, into evidence (Tr. 2:6-7). Trial counsel suggested that there were elements within Ms. Murphy's medical record that went to her mental state (Tr. 2:6-8). Judge Ronquillo held that these records were not relevant to

the case and trial counsel asked that his objection be
noted (Tr. 2:8).    Furthermore,  trial  counsel  cross-
examined Ms. Murphy regarding anxiety and her use of
Xanax (Tr. 1:88).    That  trial  counsel  questioned  Ms.
Murphy regarding her mental state, in conjunction with
his push to get her medical records regarding her
Xanax prescription admitted into evidence, illustrates
that    trial    counsel    did    indeed    investigate    the
defendant's    proffered    information    regarding    Ms.
Murphy's mental problems.    Again, the defendant did
not provide an affidavit from trial counsel outlining
his tactical decisions.    Therefore, the defendant's
claim  that  trial  counsel  did  not  investigate  Ms.
Murphy's mental state must fail.

II.    **THE MOTION JUDGE CORRECTLY DENIED THE DEFENDANT'S
MOTION  FOR  NEW  TRIAL  WITHOUT  AN  EVIDENTIARY
HEARING  WHERE  THE  DEFENDANT  FAILED  TO  MAKE  A
SUBSTANTIAL  SHOWING  THAT  AN  EVIDENTIARY  HEARING
WAS WARRANTED.**

A judge presiding over a motion for a new trial
may  rule  on  the  issue  or  issues  presented  without
holding  an  evidentiary  hearing  if,  on  the  basis  of
facts alleged in the affidavits, no substantial issue
is raised by motion or affidavits.    Mass. R. Crim. P.

30(c)(3) (2002), 378 Mass. 900 (1979). *See also Commonwealth v. Stewart*, 383 Mass. 253, 257 (1980). It is within the discretion of the motion judge whether to conduct an evidentiary hearing or to decide the motion based on facts in accompanying affidavits. *Commonwealth v. DeVincent*, 421 Mass. 64, 67 (1995); *Licata*, 412 Mass. at 660-661. In a case such as this, in which the motion judge is also the trial judge, the court extends special deference. *Grace*, 397 Mass. at 307, citing *DeChristoforo*, 360 Mass. at 543. Here, the motion judge's decision was not an abuse of his discretion.

When the defendant's showing raises no "substantial issue[s]" it is not error for the judge to deny an evidentiary hearing. *See Commonwealth v. Scoggins*, 439 Mass. 571, 578 (2003), citing *Commonwealth v. Cook*, 438 Mass. 766, 774 (2003). The judge will determine the adequacy of defendant's showing on the issue raised and examine any affidavits in light of these standards. *See Stewart*, 383 Mass. at 257-258, 260. The defendant has not met the standard, as he has not raised a substantial issue that warrants an evidentiary hearing.

The defendant claims that the affidavits he proffered in support of his motion for new trial contained testimony that would have supported his claim of self-defense and thus warrant an evidentiary hearing (D.Br. 19). The motion judge, however, may decide whether to hold an evidentiary hearing based on the affidavits offered. See Commonwealth v. Laurore, 437 Mass. 65, 75 (2002) (upholding a denial of a motion for new trial where the motion judge was also the trial judge and found, without an evidentiary hearing, that defense counsel had "wrung everything from the case that he possibly could"), citing Commonwealth v. Lopez, 426 Mass. 657, 663 (1998) (holding that the motion judge did not abuse his discretion by denying the defendant's motion without an evidentiary hearing). Contrary to the defendant's contention (D.Br. 14), Judge Ronquillo determined that trial counsel's performance met the test set forth under Saferian (D.A. 22A). Since the defendant failed to satisfy his burden of proving ineffectiveness, Judge Ronquillo's ruling was proper. See Laurore, 437 Mass. at 75 (holding that because defendant did not meet his burden of raising a substantial issue, the

motion judge did not err by denying the motion without an evidentiary hearing). The defendant offered no evidence or claim that merited an evidentiary hearing. Accordingly, Judge Ronquillo did not err by not holding an evidentiary hearing.

The decision on a motion for a new trial lies within the sound discretion of the judge and will not be reversed unless it is manifestly unjust or the trial was infected with prejudicial constitutional error. *Commonwealth v. Johnson*, 435 Mass. 113, 123 (2001), *citing Commonwealth v. Nieves,* 429 Mass. 763, 770 (1999). In this case, Judge Ronquillo had the opportunity to ascertain trial counsel's competence throughout the trial. He also noted during the motion hearing that he had read all of the affidavits submitted. (R. 15). He found that "[trial counsel's] conduct and trial tactics did not rise to behavior falling measurably below that which might be expected from an ordinary fallible lawyer and therefore, the motion is denied [cites *Saferian*]" (D.Br. 22A).[9]  Judge

_____

[9] The defendant misquotes Judge Ronquillo, stating that his findings were that "[trial counsel's] conduct might be expected from an ordinary fallible lawyer…." (D.Br. 14).

Ronquillo held trial counsel to the standard set forth in *Saferian*.    His  decision  denying  the  defendant's request for an evidentiary hearing was well within his discretion.    *See  DeVincent*,  421  Mass.  at  69. Therefore, the court should defer to Judge Ronquillo's decision and the defendant's claim must fail.

### CONCLUSION

For  the  foregoing  reasons,  the  defendant's conviction should be affirmed.

Respectfully submitted,
FOR THE COMMONWEALTH,

DANIEL F. CONLEY
District Attorney
For the Suffolk District

ON THE BRIEF:
GREER SPATZ
Legal Assistant to
The District Attorney

DONNA JALBERT PATALANO
Assistant District Attorney
For The Suffolk District
BBO# 651223
One Bulfinch Place
Boston, MA 02114
(617) 619-4070

October 8, 2003

## COMMONWEALTH'S SUPPLEMTAL APPENDIX

South Boston Criminal Docket;
0203CR000417 ................................C.A. 1-2

Defendant's Motion For New Trial And
Supporting Affidavits .........................C.A. 3-8

## SCHEDULING HISTORY

| NO. | SCHEDULED DATE | SCHEDULED EVENT | RESULT | JUDGE | TAPE NO. | START | STOP |
|---|---|---|---|---|---|---|---|
| 1 | 3/26/02 | not recalled | recall 3/26/02 ☐ Held ☐ Cont'd | ofarello H | 139 | 3/01 | |
| 2 | 3/26/02 | Arr | ☐ Held ☐ Cont'd | ofarello | 139 | 3/01 | |
| 3 | 5-9-02 | PTH | ☐ Held ☐ Cont'd | | | | |
| 4 | 6/11/02 | PTH | ☐ Held ☐ Cont'd | | | | |
| 5 | 8/1/02 | CtB | ☐ Held ☐ Cont'd | | | | |
| 6 | 10-11-02 | Trial | ☑ Held ☐ Cont'd | | | | |
| 7 | 1-29-03 | | ☐ Held ☐ Cont'd | | | | |
| 8 | 2/3/03 | Docket | ☐ Held ☐ Cont'd | Brazil, Jo | 0322 | 0830 | 110X |
| 9 | | | ☐ Held ☐ Cont'd | " " | 0372 | 1804 | end |
| 10 | | | ☐ Held ☐ Cont'd | " " | 0349 | 9/27 | 1000 |

ARR=Arraignment PT=Pretrial hearing CE=Discovery compliance and jury election T=Bench trial J=Jury Trial PC=Probable cause hearing M=Motion hearing SR=Status review SRP=Status review of payments FA=First appearance in jury session S=Sentencing CW=Continuance-without-finding scheduled to terminate P=Probation scheduled to terminate DFTA=Defendant failed to appear and was defaulted WAR=Warrant issued WARD=Default warrant issued WR=Warrant or default warrant recalled PR=Probation revocation hearing

## OTHER DOCKET ENTRIES

| ENTRY DATE | |
|---|---|
| 3/26/02 | No Contact + Stay away from Theresa Murphy |
| 5/9/02 | Case Cont b/c no judge available    ofarello, J |
| 2-4-03 | Terms of Probation? |
| | No contact w/ victim — Remain Drug & Alcohol |
| | free — Drug & Alch. treatmt as required by probation — |
| | Anger Management — Random Urines. Rpt to Prob. |
| | 48 hrs after release. |
| 2-4-03 | continuation of Trial Docket Ct.   Tape # 0350   START → end. |
| | 0391   start → 1052 |
| 2-26-03 | Motion filed notice of appeal 41   1:40 → 2412 |
| 3-11-03 | Notice of Appeal |

## ADDITIONAL ASSESSMENTS IMPOSED OR WAIVED

| DATE IMPOSED and JUDGE | TYPE OF ASSESSMENT | AMOUNT | DUE DATES and COMMENTS | ✓WAIVED |
|---|---|---|---|---|
| 3/25/03 Motion For New Trial Filed | Legal Counsel Fee (211D §2A ¶2) | | | |
| | Legal Counsel Contribution (211D §2) | | | |
| | Court Costs (280 §6) | | | |
| | Drug Analysis Fee (280 §6B) | | | |
| | OUI §24D Fee (90 §24D ¶9) | | | |
| | OUI Head Injury Surfine (90 §24[1][a][1] ¶2) | | waive while in custody | |
| 2-4-03 Brazil | Probation Supervision Fee (276 §87A) | $50 | P/month or $10 Mo CS | P/mi |
| | Default Warrant Assessment Fee (276 §30 ¶2) | | | |
| | Default Warrant Removal Fee (276 §30 ¶1) | A TRUE COPY, | | |
| | | THIS 28th DAY OF ____ 2063 | | |

A TRUE COPY,
THIS 28th DAY OF ____ 2063
C.A. ATTEST: ____
Clerk-Magistrate/Assistant Clerk

| DOCKET CONTINUATION | | NAME OF CASE _John Farmer_ | DOCKET NUMBER _02-0417_ |
|---|---|---|---|

| NO. | DATE | DOCKET ENTRIES |
|---|---|---|
| ✓ | 4.28.03 | S/M IN DORCH for. Conquillo. Hab & to SCMC for Dock by 4/28/03 |
|  | 4.28.03 | Motions for new trial filed |
|  | APR 28 2003 | Tape 1190 @ 2471 - 3714 (End) |
|  |  | Tape 1191 @ 0000 - 0129 |
|  | 5-19-03 | Decision of motion from Ronquillo, J. : Motion Denied |
|  | 5/21/03 | Atty Witkin notified of Court's decison re: Motion for new trial |
|  | 5/27/03 | Notice of Appeal filed. |
|  | 6.19.03 | Transcript recvd. |
|  | 6.20.03 | Sent to Appeals Ct. |

A TRUE COPY,

THIS __20th__ DAY OF __June__ 20_0_3_

C.A. 2  ATTEST: _____

Clerk-Magistrate/Assistant Clerk

DC-CR 14 (12/89)

# ROGER WITKIN

**ATTORNEY AT LAW**

**6 BEACON STREET**

**BOSTON, MASSACHUSETTS 02108**

———

**TEL (617) 523-0027**

**FAX (617) 523-2024**

April 22, 2003

Criminal Clerk
South Boston District Court
535 Broadway
South Boston, MA 02127

RE:  **COMMONWEALTH V. JOHN FARMA**
     NO. 0203CR000417

Gentlepeople:

        In regard to the above entitled matter which is scheduled for hearing before
the Trial Judge at 2:00 p.m., Monday, April 28, 2003, in the Dorchester District
Court, I enclose herein for filing the following Affidavits In Support of Motion For a
New Trial:

               1.  Affidavit of Philip Powell;
               2.  Affidavit of Anne Farma;
               3.  Affidavit of Daniel Fowkes;
               4.  Affidavit of Carl Regan; and,
               5.  Affidavit of Nancy Farma.

        I have taken the liberty of forwarding a copy of each of these Affidavits to
the Trial Justice.

              Thank you.                    Very truly yours,



                                     **ROGER WITKIN**

/slw
enc.
c.c.    client
        Mr. and Mrs. Anthony Farma
        Honorable Robert Ronquillo, Jr.
        ADA David Markowitz


C.A. 3

## COMMONWEALTH OF MASSACHUSETTS

**SUFFOLK, S.S.**                    SOUTH BOSTON DISTRICT COURT
                                     No. 0203CR000417

**COMMONWEALTH**

**V.**

**JOHN FARMA**

## AFFIDAVIT OF PHILIP POWELL
## IN SUPPORT OF MOTION FOR A NEW TRIAL

1. My name is Philip Powell.

2. I have worked with John Farma for approximately fifteen (15) years at Boston Gas/Keyspan.

3. John was a customer services representative as I am also.

4. I saw John Farma at Florian Hall. He was intoxicated, drunk. Compounded with being on light duty due to a back injury he couldn't function or walk well.

5. That evening I met Theresa Murphy inside Florida Hall. She had been drinking. It was obvious to me. I saw her drink four to five beers during the time I was talking to her. We were in a group of people including John Farma.

6. I offered John Farma a ride home. Theresa Murphy interrupted me to offer to take him home. Another union man interrupted to offer John a ride home. She, Thresea Murphy, again offered to take John Farma home.

7. I left Florian Hall.

8. I talked to Mr. Kelly during one of the pretrial hearings at Dorchester District Court.

9. Mr. Kelly told me that his strategy was to not badger the "girl" (Ms. Murphy) because the judge and jury would not be sympathetic to that.

Signed this 18th day of April under the penalties of perjury.

PHILIP POWELL

C.A. 4

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, S.S.                    SOUTH BOSTON DISTRICT COURT
                                No. 0203CR000417


COMMONWEALTH

V.

JOHN FARMA

## AFFIDAVIT OF ANNE FARMA
## IN SUPPORT OF MOTION FOR A NEW TRIAL

1. My name is Anne Farma.

2. I am the sister of the defendant John Farma.

3. I saw my brother John the night he came in after having been beaten by Ms. Murphy.

4. I wanted to be a witness at my brother's trial and in fact I was a witness at my brother's trial.

5. However, at no time did Attorney Kelley request that I meet with him or give him a statement of my proposed testimony.

6. At no time did Attorney Kelley ever prepare me for testifying, something I am not used to doing. I had never testified before that day.

7. I was thoroughly unprepared for what came when I testified as I had spoken only briefly with Mr. Kelley just prior to the trial starting.

Signed this 18th day of April, 2003, under the penalties of perjury.


ANNE FARMA

C.A. 5

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, S.S.                    SOUTH BOSTON DISTRICT COURT
                                No. 0203CR000417

COMMONWEALTH

V.

JOHN FARMA

## AFFIDAVIT OF DANIEL FOWKES
## IN SUPPORT OF MOTION FOR A NEW TRIAL

1. My name is Daniel Fowkes.

2. I was John Farma's shop steward at the time of these events. Local 12003, Steelworkers Union.

3. I saw John Farma at Florian Hall.

4. I could have testified concerning Mr. Farma's injury to his back. He was out on light duty.

5. At Florian Hall I saw Mr. Farma obviously intoxicated. I knew he was drunk.

6. The very next day I represented Mr. Farma for the Union as his Union representative. I saw on the left side of his face scratched extending from upper nose to the lower part of his cheek bone. I also saw his left eye swelled out.

7. Months before the trial, I gave Mr. Farma's attorney, Mr. Kelly, the name of the two (2) management representatives who saw John Farma that morning and could testify as to his injuries.

8. Neither I nor the two (2) representatives were called by Mr. Kelly at the trial.

Signed this 18th day of April 2003, under the penalties of perjury.

**DANIEL FOWKES**

C.A. 6

# COMMONWEALTH OF MASSACHUSETTS

**SUFFOLK, S.S.**                    **SOUTH BOSTON DISTRICT COURT**
                                     **No. 0203CR000417**

**COMMONWEALTH**

**V.**

**JOHN FARMA**

## AFFIDAVIT OF CARL REGAN
## IN SUPPORT OF MOTION FOR A NEW TRIAL

1. My name is Carl Regan and I am also known as C. J. Regan.

2. I was a witness to the events that occurred between Ms. Murphy and John Farma, my neighbor.

3. Sometimes after those events I spoke with John Farma, the defendant, and indicated to him that I had in fact seen what happened as I did not believe that he had seen me at that time.

4. Sometime after that I received a telephone call from Attorney Kelley representing John Farma.

5. Mr. Kelley spoke to me for less than five minutes. I explained to him in that brief time what I was doing at the time that I observed what it was that was going to be the subject matter of the trial.

6. The next time I heard from Attorney Kelley was the day of the trial when I was introduced to Mr. Kelley and spoke to him for approximately five minutes.

7. At no time did Mr. Kelley go over my proposed testimony nor did he show me how to respond to any anticipated cross examination by the prosecutor.


Signed this 18th day of April, 2003, under the penalties of perjury.

*Carl J Regan*
**CARL REGAN**

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, S.S.                          SOUTH BOSTON DISTRICT COURT
                                       No. 0203CR000417


COMMONWEALTH

V.

JOHN FARMA

## AFFIDAVIT OF NANCY FARMA
## IN SUPPORT OF MOTION FOR A NEW TRIAL

1. My name is Nancy Farma.

2. I am the mother of the defendant John Farma.

3. On the morning after the incident alleged against my son, I saw him in our home.

4. If I had been called to the witness stand by Mr. Kelley, I would have been able to testify that John looked beaten, and had several abrasions about his face.

5. I had inquired of my son whether or not I would be called as a witness and he had indicated to me that I would be called.

6. It came as a surprise to me that I was not called as a witness in the trial to testify about what I saw the next morning.

      Signed this/ *l*^th day of April, 2003, under the penalties of perjury.

                    *Nancy Farma*
                    NANCY FARMA

26

**ADDENDUM**

**M.G.L. c. 265, § 15A Assault and battery with dangerous weapon; victim sixty or older; punishment; subsequent offenses**

\* \* \* \*

(b) Whoever commits an assault and battery upon another by means of a dangerous weapon shall be punished by imprisonment in the state prison for not more than 10 years or in the house of correction for not more than 21/2 years, or by a fine of not more than $5,000, or by both such fine and imprisonment.

**Massachusetts Rule Of Criminal Procedure 30. Post Conviction Relief**

\* \* \* \*

(c) Post Conviction Procedure.

\* \* \* \*

(3) *Affidavits*. Each moving party shall file and serve and parties opposing a motion may file and serve affidavits where appropriate in support of his respective position. The judge may rule on the issue or issues presented by such motion on the basis of the facts alleged in the affidavits without further hearing if no substantial issue is raised by the motion or affidavits.

**Massachusetts Rule of Appellate Procedure 18. Appendix To The Briefs**

(a) Duty of Appellant to Prepare and File; Content of Appendix; Time for Filing; Number of Copies. The appellant shall prepare and file an appendix to the briefs. In civil cases, the appendix shall contain: (1) the relevant docket entries in the proceedings below; (2) any relevant portions of the pleadings, charge, findings, or opinion; (3) the judgment, order, or decision in question; and (4) any other parts of the record to which the parties wish to direct the particular attention of the court. Except where they have independent relevance, memoranda of

28

law in the lower court should not be included in the appendix.

In criminal cases, the appendix need not contain relevant portions of the transcript, but shall contain: (1) the relevant docket entries in the proceedings below; (2) a copy of the complaint or indictment; and (3) any paper filed in the case relating to an issue which is to be argued on appeal. Any party in a criminal case may include in an appendix to his brief any other parts of the record to which he wishes to direct the particular attention of the court.

The appendix shall include any order of impoundment or confidentiality from the lower court. The fact that parts of the record are not included in the appendix shall not prevent the parties or the court from relying on such parts, provided that the court may decline to permit the parties to refer to portions of the record omitted from the appendix, unless leave be granted prior to argument.

Unless filing is to be deferred pursuant to the provisions of subdivision (c) of this rule, any appendix shall be filed and served with the brief. If separately bound, the same number of copies of the appendix shall be filed with the clerk as required by Rule 19(b) for the filing of the brief, and two shall be served on counsel for each party separately represented, unless the court shall by rule or order direct the filing or service of a lesser number and except as otherwise provided in subdivision (e) of this rule.

No. 2003-P-0874

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

COMMONWEALTH OF MASSACHUSETTS,
Appellee

V.

JOHN FARMA,
Defendant-Appellant

COMMONWEALTH'S BRIEF AND SUPPLEMENTAL APPENDIX
ON APPEAL FROM JUDGMENTS OF
THE DORCHESTER DISTRICT COURT

SUFFOLK COUNTY